GRAVOIS, J.
In this community property partition suit between former spouses Heather Grace Villarrubia and Todd Villarrubia, Todd suspensively appeals a trial court judgment rendered on April 10, 2018 and amended on June 13, 2018, finding that the contested "BP fees" were community property *951 and awarding Heather $782,766.83 as her one-half interest in the "BP fees." For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
In 2001, prior to the parties' marriage in 2002, Todd, an attorney, formed a professional law corporation, Todd M. Villarrubia, PLC d/b/a Wealth Planning Law Group ("the PLC"), a Subchapter S corporation, for his law practice, of which he was 100 per cent owner, the sole member, and where he was employed throughout the marriage and after his filing of the petition for divorce.[1] Following the BP Deepwater Horizon oil spill, the PLC entered into contingency fee contracts for the adjustment of BP claims of many of the PLC's clients. Todd performed work on the BP files both before and after the filing of the petition for divorce for which settlement proceeds were mostly received after the petition for divorce was filed. In the community property partition proceeding, a dispute arose concerning the amount of Todd's compensation for the work he performed on the BP contracts during the time of the marriage, which Heather claimed was community property and for which she sought her statutory share of the BP settlement proceeds held by the PLC. Heather also claimed that the value of the PLC was enhanced, during the marriage, by the uncompensated or undercompensated labor of Todd, which could form the basis of a reimbursement claim in her favor pursuant to La. C.C. art. 2368. Todd claimed that he was compensated during the community by a salary and that all fees received from the contingency fee contracts were the property of the PLC, a juridical entity separate from him which is also his separate property.
On December 8, 2014, the PLC intervened in the community property partition proceeding, claiming that intervention was necessary to protect the PLC's rights and property, noting that discovery had been propounded by Heather to Todd individually, seeking records and information from the PLC regarding the BP contracts, as well as other contingency fee contracts, and information relative to Todd's income and compensation during the marriage. The PLC claimed ownership of all of the BP fees being held in its IOLTA account.[2] All other matters in the partition suit were resolved by a consent judgment dated March, 29, 2016. In that judgment, however, the claims regarding "the valuation, enhancement and/or reimbursement claims affecting or relating to the Professional Law Corporation, including but not limited to any BP or Deepwater Horizon claims" were expressly reserved.
Following ongoing discovery, on November 17, 2017, Heather reurged exceptions of no right of action and no cause of action to the PLC's intervention. Her exceptions were granted on January 22, 2018, and ultimately the PLC was dismissed from the suit.[3] The partition trial on the BP claims occurred on January 29, 2018, with the trial court issuing a written judgment on April 10, 2018, finding the "BP fees" to be community property, and awarding *952 Heather $782,766.83 as her one-half interest in the "BP fees."
Todd filed a motion for a new trial, arguing that the trial court erred in not taking into account the PLC's overhead and taxes, and attaching documentary evidence generated from the PLC's business records regarding those claimed offsets. In a judgment issued on June 13, 2018, the trial court denied the motion for a new trial except to amend the April 10, 2018 judgment to order that Todd personally pay Heather within five business days of the amended judgment. Todd timely filed a suspensive appeal.
On appeal, Todd assigns two errors of the trial court. First, he argues that the trial court legally erred in determining that the BP fees paid exclusively to a separately owned entity, the PLC, after the community terminated, for work performed on contingency fee contracts solely owned by the PLC, are community property. Second, he argues that the trial court legally erred in awarding Heather $782,766.83 as her one-half interest in the BP fees earned by Todd during the existence of the community without consideration of income taxes and the overhead incurred to produce those fees.
ANALYSIS
The trial court has broad discretion in adjudicating issues raised by partition of the community and is afforded great latitude in arriving at an equitable distribution of assets between spouses. McLaughlin v. McLaughlin , 17-645 (La. App. 5 Cir. 5/16/18), 247 So.3d 1105, 1111, citing Vedros v. Vedros , 16-735 (La. App. 5 Cir. 10/25/17), 229 So.3d 677, 680. The allocation or assignment of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. Id. Factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. McLaughlin v. McLaughlin , 247 So.3d at 1111. The trial court's findings based on determinations regarding the credibility of witnesses are undoubtedly entitled to great deference. Rosell v. ESCO , 549 So.2d 840, 844-45 (La. 1989).
ASSIGNMENT OF ERROR NO. ONE
In his first assignment of error, Todd argues that the trial court erred in determining that the BP fees were community property. He argues that because all of the BP contracts were between the PLC and its clients, they are property of the PLC; therefore, the fees received by the PLC in settlement of those claims also belong to the PLC and cannot be considered assets of the former community. He argues that all of the BP fees received by the PLC prior to termination of the community were distributed before the community property regime terminated, but in the event there had been any undistributed BP fees, those fees would remain property of the PLC until such time as they were distributed and would not be considered property of Todd until that time. He also argues that the trial court's reliance on Due v. Due , 342 So.2d 161 (La. 1977), which the court cited in its reasons for judgment, was error.
To the extent that a right to receive proceeds derives from a spouse's labor and industry during the existence of the community, that right is a community asset, even if the proceeds are received after dissolution of the community. La. C.C. arts. 2338 and 2369.2 ; Delahaye v. Delahaye , 04-0310 (La. App. 1 Cir. 12/30/04), 936 So.2d 822, 824.
At the trial of this matter, Heather presented evidence of the firm's receipt of BP fees through the testimony of Antonio *953 Cino. Mr. Cino testified that he was an accountant and was hired by Todd to be the PLC's comptroller in 2012.[4] As comptroller, he was responsible for managing the PLC's staff, human resources, employee benefits, preparation of the PLC's financial statements, all billing processes of the firm, receipts and accounts payable, preparing monthly closing reports and year-end reports, and coordination of the firm's tax returns with the firm's CPA. Mr. Cino testified that he was responsible for accounting and settlement when fees came into the firm, including the BP fees, and that he would prepare the settlement statements given to clients to show how the firm arrived at the clients' net payouts.
The evidence introduced at trial showed that the BP contracts were entered into during the marriage and that Todd performed work on the BP contracts both during the marriage and after he filed for divorce. The evidence also showed that the PLC received almost all of the BP settlement proceeds after Todd filed for divorce.[5]
Working off of figures that the parties stipulated to in a joint pre-trial order, Mr. Cino testified that the PLC received the net sum of $2,921,270.76 for work on the BP files.[6] This amount represented legal fees due to the firm, not gross settlement amounts, Mr. Cino testified, as this figure was calculated after all clients had been paid their settlements. Mr. Cino testified that none of the paralegals at the PLC who worked on BP files had a right to share in the BP fees, as they were paid by salary, nor was there anyone working for the PLC on any contingency basis entitled to a percentage of the BP fees. He testified that all staff salaries had already been paid, as well as any co-counsel fees due to other lawyers.
Mr. Cino testified that the total number of hours Todd worked on the BP files prior to the filing of the petition for divorce was 374.6 hours, and the number of hours Todd worked on the BP files after the petition for divorce was filed was 324.4 hours, for a total of 53.590844 per cent of Todd's time having been worked on the BP cases prior to the end of the community. This figure was generated from the PLC's operating and accounting software program. Applying that percentage to the $2,921,270.76 received in BP fees yielded the figure of $1,565,533.66. Dividing that figure in half, as per La. C.C. art. 2369.2, Heather claimed that her portion of the BP fees amounted to $782,766.83, which is the amount ultimately awarded to her in the trial court judgment under review.
In response, Todd argues that Heather did not carry her burden of proof that the PLC increased in value during the existence of the community as a result of his uncompensated labor or industry, and thus she did not prove her entitlement for reimbursement under La. C.C. art. 2368. However, we find that the issue adjudicated by the trial court at the January 29, 2018 trial was the community's share of Todd's compensation *954 for his work on the BP files during the marriage, not an Article 2368 reimbursement claim for the PLC's increased value.
Todd also argues in brief that the trial court's judgment was in error because the BP contracts were the property of the PLC as they were entered into between the PLC and its clients. He argues that the trial court erred in relying on Due v. Due , supra , in its reasons for judgment.[7] Due concerned a discovery dispute in a community property partition proceeding between a wife and her husband, an attorney. It held that "whatever the theoretical nature of the right a contingent fee contract creates in the husband a patrimonial asset, i.e. (in ordinary language) 'property', which is acquired by him during the marriage, Article 2334, and which (to the extent that his labor and industry contribute during the marriage, Article 2402) is an asset of the community existing between his wife and himself at the time of its dissolution, Article 2405." Due v. Due , 342 So.2d at 163-64. It appears, however, that the Due contracts were directly between Mr. Due and his clients, unlike the contracts in this case between the PLC and its clients.
Heather did not dispute, however, that the contracts themselves were the property of the PLC, and that the PLC was Todd's separate property. The issue before the trial court was Todd's compensation for his work performed on the BP contracts prior to termination of the community relative to the net amount of BP fees the PLC received. Todd conflates, in brief, the ownership of the contracts and the fees that they generated. He claims that because the contracts were assets of the PLC, Due requires the conclusion the fees that they generated were also assets of the PLC, and not his own property. This conclusion, though, is not supported by Due . The Court in Due suggested that in due course of the partition proceedings, the amount due to Mr. Due on each contingency fee contract attributable to work he performed prior to the termination of the community could be determined without undue difficulty, upon conclusion or settlement of each case. Due v. Due , 342 So.2d at 167, n 5.
The Due court went on to consider the implications for the valuation of Mr. Due's law partnership: "As to an ancillary point, we should note that the court of appeal correctly held that any contingent fee contracts which are the property of the defendant's law partnership cannot be considered as assets of the community. The partnership is a separate entity. However, the husband's interest in the partnership is, to the extent acquired during the marriage, a community asset the value of which should be included in the inventory." Due v. Due , 342 So.2d at 166. Pertinent to our application of Due to this case, inherent in a partnership is the presence of other partners who also have ownership interests in the partnership assets and the revenue. In the instant case, though there is a separate juridical entity, there is no partnership; Todd is the sole owner of the PLC. No other owners or members existed to assert rights to the assets or their revenue.[8]
*955 Mr. Cino testified that after a client's settlement was disbursed, an IOLTA check would be cut to the PLC for its portion of the fees.[9] Mr. Cino agreed that Todd, as the only member of the PLC and its 100 per cent owner, had sole decision-making authority on what to do with that money. As noted above, Mr. Cino testified that no one else at the PLC, nor any outside counsel, had any right to receive a portion of the BP fees. Evidence at trial showed that Todd had used the operating account of the PLC on occasion to pay personal expenses, and also had Mr. Cino distribute dividends to him from the operating account, at times of Todd's choosing. The evidence also showed that the PLC did not normally retain large amounts of money in its accounts. Thus, the evidence showed that as the sole member and 100 per cent owner of the PLC, no one else had a right to the remainder of the BP fees other than Todd. Accordingly, the trial court correctly concluded that the net BP fees were in fact compensation to Todd for his work performed on the BP files.
Finally, we consider Todd's contention that the trial court erred, in its reasons for judgment, by declaring that he and his PLC were "one and the same." We agree with appellant that the evidence was clear that the PLC was a distinct legal entity from Todd, and that the record is equally clear that Heather did not contest this fact. The trial court also affirmed this fact repeatedly throughout the litigation. It appears to this Court that the trial court's statement in its reasons for judgment was merely a poorly-worded recognition that at the end of the day, as sole member and 100 per cent owner of the PLC, a subchapter S corporation, Todd had sole right to all of the net BP fees to use and distribute as he chose, as evidence showed he had done in the past with other revenue.[10]
Accordingly, the evidence at trial supported the trial court's conclusion that the net BP fees were in fact compensation to Todd for work he performed on those files, and thus were partly community property subject to partition. We find no manifest error in the trial court's conclusion that the portion of the BP fees attributable to the work Todd performed on the BP files before he filed for divorce was community property subject to partition. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. TWO
In his second assignment of error, Todd argues alternatively that the trial court erred in finding that Heather was owed the particular amount of $782,766.83, when the court did not consider the PLC's overhead costs of producing those fees or the tax implications that could potentially reduce the amount of his income from the BP cases.
Heather responds in brief that at trial, Todd failed to present any evidence whatsoever of overhead, taxes, or any other evidence tending to show that this amount should be reduced in any way. She also notes that at trial, Todd did not present the trial court with any alternative formula to calculate the community property portion of the fees, despite objecting to her *956 attorney's calculation during the testimony of Mr. Cino.
Todd did not, in fact, introduce any evidence at the trial regarding offset for taxes and overhead, which are defenses to Heather's monetary claims, that he now raises on appeal. In his motion for a new trial, Todd attached evidence of the firm's overheard costs and other deductions he claimed should have been made to the $782,766.83 figure. Heather filed a motion to strike exhibits one through seven attached to Todd's motion for a new trial, arguing that the attachments were improper as this evidence could have been, but was not introduced at trial. The trial court granted the motion to strike regarding exhibits one through seven, and also granted a motion to strike any arguments relying on those exhibits. The trial court then denied the motion for a new trial, finding that Todd had not been prevented from putting on his defenses at trial and had not been prohibited from introducing any evidence, including much of the evidence he then attached to his motion for a new trial, nor had he proffered any evidence at trial.
Once Heather established an amount she claimed was her community property share of the BP fees, Todd had the burden of proof to present evidence to rebut that figure if he disagreed. He failed to present any evidence at trial rebutting that figure, except for his uncorroborated testimony estimating that the PLC's "overhead" expenses historically amounted to around 61-68 per cent of gross revenue, and that his taxes were effectively 50-60 per cent of net profit.[11] The trial court, however, declined to credit his testimony in this regard.[12] The trial court found that Todd's credibility was lacking regarding other business practices of the PLC.[13] Specifically, evidence at trial revealed obvious inaccuracies and misrepresentations in the PLC's internal business records and tax returns. For instance, the PLC listed Heather as an employee from 2002 to 2013, which Todd admitted was untrue.[14] Other business records of the PLC showed that the PLC listed Heather employed as an administrative marketing assistant, and that she had worked 2,080 hours for the firm, neither of which were true, he admitted at trial.[15]
Accordingly, we find that the trial court did not err in awarding Heather $782,766.83 as her one-half interest in the BP fees earned by Todd during the existence of the community without deducting income taxes and/or overhead allegedly incurred to produce those fees. This assignment of error is without merit.
*957 CONCLUSION
For the foregoing reasons, the judgment under review on appeal is affirmed. All costs of this appeal are taxed to appellant.
AFFIRMED

Heather does not dispute that the PLC is Todd's separate property.

IOLTA stands for "Interest on Lawyers' Trust Accounts."

The PLC appealed that judgment. The appeal, Villarrubia v. Villarrubia , 13-CA-320, was considered by this Court on the same docket as the instant case. In a separate opinion rendered this day, this Court affirmed the judgment granting Heather's exceptions of no cause of action and no right of action and dismissing the intervention of the PLC.

Mr. Cino held that full-time position until 2014, when he became the firm's virtual comptroller, a part-time position. He left the firm briefly in 2015, but returned in November 2015 to the same comptroller duties.

The BP fees received during the marriage were distributed prior to termination of the community and are not at issue herein.

The particular numbers were established in the joint pre-trial order filed on January 26, 2018. The record shows that these fees were received over the course of several years, beginning after the termination of the community in 2014. In their Joint Pre-Trial Order, the parties stipulated, among other things, that the PLC received at least $21,031.28 in BP fees in 2015, at least $2,681,898.98 in BP fees in 2016, and at least $218,340.50 in BP fees in 2017.

Appeals are taken from judgments, not reasons for judgment. Wooley v. Lucksinger , 09-0571 (La. 4/1/11), 61 So.3d 507, 572. A trial court's reasons for judgment, while elucidating the trial court's thought process, are not legally binding on higher courts, who may affirm a judgment for different reasons.

This Court does not agree with the trial court's interpretation of Due to hold that a contingency fee contract cannot be between a juridical entity and a client. However, the record contains no support for appellant's contention that the trial court's misapplication of Due in this regard interdicted the "fact finding" process.

Todd testified that the BP fees remained in the IOLTA account, instead of being transferred to operating accounts, per the advice of the PLC's attorney because of this pending litigation.

See , 2 La. Prac. Divorce § 9:37, which states that "as of now, undistributed income of a pass-through entity that is separate is separate unless the income is actually made available to the owner spouse so that it can be withdrawn at any time for any purpose." (Citations omitted.)

At the hearing on the motion for a new trial, the trial judge noted that much of the evidence Todd attached to the motion in an attempt to rebut Heather's figures was known to Todd prior to trial as it was produced from the PLC's business records from years preceding the 2018 trial. She further noted that Todd had not attempted to introduce such evidence at the trial, nor had it been produced in discovery or listed on pretrial orders.

Though Todd's trial testimony regarding overhead and taxes was uncontroverted, it was also uncorroborated by any documentary evidence at trial.

At the hearing on Todd's motion for a new trial, the judge specifically found Todd's trial testimony to have lacked credibility.

Todd testified that Heather was listed as an employee of the PLC upon the advice of his CPA, and that he was advised that such was a common practice.

Todd and Mr. Cino testified that certain financial advantages (tax and retirement) accrued to the PLC and the Villarrubias by claiming Heather was an employee.